IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK DUSTY MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  CIV-12-625-F |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |

## REPORT AND RECOMMENDATION

Mark Dusty Morgan (Plaintiff) brought this matter pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income (SSI) payments under the Social Security Act. United States District Judge Stephen P. Friot referred the case to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3).  Upon review of the pleadings, the administrative record (AR) and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

---

[1]  Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

I.     **Administrative proceedings.**

In documents supporting his February 2009 application for SSI payments, Plaintiff stated that total deafness in his left ear, eighty percent deafness in his right ear, depression, and migraine headaches became disabling as of February 24, 2009. AR 115-118, 123. Plaintiff reported these medical conditions limit his ability to work in that he "cannot [h]ear instructions very well or communicate with others easily" and because he is "debilitated during his migraines." *Id.* at 123.[2] Plaintiff also stated he "feels depressed and hopeless about himself and his situation." *Id.*

Plaintiff's claim was denied and, at his request, Administrative Law Judge (ALJ) Charles Headrick held a November 2010 hearing where Plaintiff, who was represented by counsel, and a vocational expert appeared and testified. *Id.* at 21-51, 78-80. At the outset of the hearing, Plaintiff's counsel made the following statement which is relevant both to the background of this claim and to Plaintiff's challenge to the ALJ's credibility findings:

> I'd like the record to reflect that [Plaintiff] was previously approved for benefits for a close[d] period of time due to his hearing loss. Judge [Hiltbrand] . . . had approved [Plaintiff] for SSI benefits from 2004 to 2007. However, he was taken off of benefits because he was fitted with new hearing aids, and the judge deemed that to be a

---

   [2]     Unless otherwise indicated, quotations in this report are reproduced verbatim.

> medical improvement.[3] We're here today because [Plaintiff's] hearing aids no longer work. His hearing is actually decreased. He now suffers from migraines and depression, which only further his inability to obtain and sustain work. We'd like to ask the Court to consider his previous decision, and through the testimony today, we'll show that he is actually worse off than he was before and that there was in fact no medical improvement.

*Id.* at 25.

By decision issued shortly after the hearing, the ALJ found Plaintiff retained the ability to perform his past relevant work and, alternatively, the ability to perform other work in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act. *Id.* at 10-16. The Appeals Council of the Social Security Administration declined Plaintiff's request for review. *Id.* at 1-4. Plaintiff then sought review of the Commissioner's final decision in this court. Doc. 1.

## II. The ALJ's findings.

The ALJ determined Plaintiff was impaired by bilateral hearing loss, an impairment that prevented him from performing a full range of work at all exertional levels. AR 12. Though severe, the impairment did not meet or medically equal the criteria of a listed impairment. *Id.* The ALJ further found

---

[3] Judge Lance K. Hiltbrand's May 24, 2007, decision is part of the present record. AR 60-64.

Plaintiff had the residual functional capacity (RFC)[4] to perform work at the medium exertional level. *Id.* Plaintiff's hearing, however, was limited, and he was restricted to work where he would have no concentrated exposure to noise. *Id.* The ALJ then noted the following medical, subjective, and opinion evidence in making additional findings.

Records from the Edwin Fair Mental Health Center showed that Plaintiff was diagnosed on June 9, 2009, with a depressive disorder and deafness in the left ear. *Id.* at 13, 341-42. He was assessed with a current GAF[5] rating of 52. *Id.* A few weeks prior to this assessment, Plaintiff had been evaluated by Dan M. Smith, Ph.D., a consultative examining licensed clinical psychologist. *Id.* at 13, 317-24. The ALJ noted that Dr. Smith made no diagnosis of an impairment[6]

---

[4]     Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

[5]     "GAF" is the abbreviation for "Global Assessment of Functioning" and is a scale utilized by clinicians to reflect overall level of functioning. *See* American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., Text Revision, 2000) (DSM-IV-TR). In a multiaxial assessment system, "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning." *Id.* A GAF of 51-60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, functioning (e.g., no friends, conflicts with peers or co-workers)." *Id.* at 34 (bold-type emphasis deleted).

[6]     On mental status examination, Dr. Smith found that Plaintiff "did not appear to be clinically depressed." AR 321. In the diagnosis section of his
(continued...)

and, at Axis V, gave Plaintiff a GAF assessment of 78. *Id.* at 13. Then, on July 16, 2009, Plaintiff saw Mark W. Wood, M.D., at the Otologic Medical Clinic for a consultative evaluation of his hearing loss. *Id.* at 13, 362-64. Dr. Wood found that Plaintiff's "left ear had a 100 percent disability and the right had a six percent disability with a hearing aid." *Id.* at 13.

The ALJ provided the following summary of Plaintiff's testimony and subjective complaints:

> He has a hearing loss of 50 percent in his right ear and he is deaf in his left ear. He cannot pinpoint a noise or a voice and people have to repeat two to three times. He can read lips if the words are pronounced just right. On the job he had to be told three or four times before he got it right. He was in a car accident that caused a whiplash and daily migraines which last four to five hours without medicines and with the migraines last an hour or so. He is depressed and wants to be alone three to four times a week. His medicines help some. He did not wear his hearing aid to the hearing. He has to adjust constantly his hearing aids or he will have a whistling or buzzing in his ears. His friends think he is reclusive and do not like talking about his hearing problem. He can sit one to two hours, stand and or walk three to four hours walking a mile, and lift 20 pounds.

*Id.*

The ALJ then assessed Plaintiff's credibility, finding it diminished for the following reasons:

---

⁶(...continued)
evaluation, Dr. Smith noted Plaintiff's report of a total hearing loss in his left ear and a fifty percent hearing loss in his right ear. *Id.* at 323.

> The objective medical evidence shows that the claimant has a hearing loss but that his hearing can be improved substantially in the right ear to a loss of only six percent. Additionally the claimant can read lips to a very significant degree. The hearing loss established by the objective medical evidence is accounted for in the hypothetical set out above. The claimant does not have any documented physical impairment that has been shown to affect his physical ability to perform work-related activities. His statements that he is limited in his ability to sit, stand, walk, and lift are not supported in the objective medical evidence. The objective medical evidence shows treatment for depression with a low - 52- Axis V diagnosis. The claimant also was diagnosed with an Axis V diagnosis of 78 and there were no diagnoses on Axes I or II. There is no other evidence showing the existence of a mental impairment. The undersigned finds that the lack of significant and continuing mental treatment is inconsistent with the claimant's allegation of a mental impairment that significantly affects the claimant's ability to perform mental work-related activities. Accordingly, the claimant does not have a mental impairment that would affect his ability to perform mental work-related activities. The only objectively determinable impairment is the hearing which has been quantified previously. The claimant's allegation of migraines is not supported in any of the objective medical evidence; therefore, the claimant has failed to carry his burden of proving that this impairment exists.

*Id.* at 13-14.

With regard to opinion evidence, the ALJ gave reduced weight to the Edwin Fair depression diagnosis in light of the consultative mental examiner's finding and because Plaintiff did not continue to receive significant continuing treatment for depression. *Id.* at 14.

Ultimately, at step four of the sequential process, the ALJ concluded that Plaintiff could return to his past relevant work and, alternatively at step five,

that he could perform the work of a hand packer, mail clerk, machine operator, and assembly worker in the national economy. *Id.* at 14-15.

## III. Analysis.

### A. Standard of review.

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*

### B. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

### C. Plaintiff's claims of error.

Plaintiff contends the ALJ committed reversible error, first, in finding at step four that Plaintiff could return to his past relevant work; second, in his adjudication of Plaintiff's credibility; and, finally, in concluding at step five that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles (DOT).[7] Doc. 11, at 11-13, 13-15, 15-16.

---

[7] The Dictionary of Occupational Titles, published by the Department of Labor, is one of several publications from which the Social Security
(continued...)

### 1.   **Past relevant work.**

Rather than ending his decision at step four with the finding that Plaintiff was capable of returning to his past relevant work and, consequently, was not disabled, the ALJ continued on to step five, finding "there are other jobs existing in the national economy that he is also able to perform." AR 14. The ALJ then made "alternative findings for step five of the sequential evaluation process." *Id.*

Plaintiff directs his first claim of error only to the ALJ's step four findings, maintaining that the claimed error mandates reversal. Doc. 11, at 11-13. In response, the Commissioner assumes for the sake of argument that "Plaintiff's challenge is well taken."[8] Doc. 12, at 3. Nonetheless, citing to the Tenth Circuit's decision in *Murrell v. Shalala,* 43 F.3d 1388 (10th Cir. 1994), the Commissioner argues that any error at step four is harmless and not reversible in light of the ALJ's alternative step five findings. Doc. 12, at 3-4; AR 14-15.

The Commissioner is correct. The *Murrell* court not only held that an alternative finding at step five was valid under Social Security regulations, but

---

[7](...continued)
Administration "will take administrative notice of reliable job information." 20 C.F.R. § 416.966(d)(1).

[8]   The undersigned agrees. Plaintiff had no past relevant work as defined by Social Security regulations.

it also endorsed that practice, reasoning that "the use of alternative dispositions generally benefits everyone[.]" 43 F.3d at 1389.  Accordingly, Plaintiff's claim that the ALJ committed *reversible* error at step four is unavailing, and the focus turns to Plaintiff's claimed error at step five.

### 2. Plaintiff's credibility.

An ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d] them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted).  In making this determination, an ALJ should consider factors such as the following:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted). Plaintiff challenges two of the ALJ's credibility findings in claiming reversible error.  Doc. 11, at 13-15.

In the first finding, the ALJ, who had noted Plaintiff's testimony about his

deafness – total left ear and fifty percent right ear[9] – and the impact it had on his daily functioning, found Plaintiff's testimony inconsistent with the objective medical evidence that Plaintiff's right ear hearing loss could be substantially improved to a loss of only six percent.[10] AR 13. Plaintiff maintains this finding was erroneous because he was not claiming the hearing in his right ear could not be improved – rather "the essence of [his] testimony was that he could not wear his hearing aid because of feedback and whistling." Doc. 11, at 13-14.

The ALJ was clearly cognizant of the fact that Plaintiff "did not wear his hearing aid to the hearing" and of Plaintiff's claim that "[h]e has to adjust constantly his hearing aids or he will have a whistling or buzzing in his ears." AR 13. The ALJ discounted Plaintiff's subjective contentions about his disabling functional limitations based on the results of Dr. Wood's testing – objective testing using Plaintiff's "*useful* hearing aid for the right ear" – that Plaintiff's "hearing can be improved substantially in the right ear to a loss of only six percent." *Id.* at 13, 362 (emphasis added). Plaintiff has demonstrated no error in connection with this finding.

The same is true with regard to Plaintiff's challenge to the ALJ's finding

---

[9] Plaintiff claimed in his initial filings that he was totally deaf in his left ear and eighty percent deaf in his left ear. AR 123.

[10] Dr. Woods – the otologist – found Plaintiff's right ear had an unaided disability of 41 percent. AR 362.

that Plaintiff "can read lips to a very significant degree." AR 13. Plaintiff claims he never denied he could read lips. Doc. 11, at 13. The point of the ALJ's credibility finding, however, is that Plaintiff's pronounced ability to read lips diminished his testimony about the disabling impact his hearing loss had on his ability to function.

Plaintiff also argues that the ALJ's credibility findings are "contradicted" by Judge Hiltbrand's May 2007 credibility findings. *Id.* at 15; AR 60-64. He makes no supported claim, however, that this demonstrates ALJ's error. The ALJ evaluated evidence that differed from that Judge Hiltbrand evaluated in May 2007 and, as finder of fact, the ALJ simply came to a different conclusion. The Plaintiff can establish no error in this regard.

In support of the ALJ's assessment, the Commissioner points to several credibility findings made by the ALJ that Plaintiff left uncontested on appeal. Doc. 12, at 8-9. The first pertains to Plaintiff's testimony – noted by the ALJ – that Plaintiff suffers from *daily* migraines lasting for an hour or so if he takes medication and from four to five hours if he does not. Doc. 12, at 8; AR 13, 33-35. The ALJ found *no* record support for this claim of significant limitation, a fact that marginalized Plaintiff's believability. AR 13-14. Plaintiff did not advance any claim of error with regard to this finding in his opening brief. Doc. 11, at 13-15. In his reply brief, however, Plaintiff claims that the ALJ failed to

develop the record in connection with his migraine headaches. Doc. 13, at 6-8.

Plaintiff now contends that during questioning on this topic by his counsel at the administrative hearing, he testified he could "get some medical records if you ever need them." *Id.* at 7; AR 33. He faults the ALJ for not securing evidence of his migraines, claiming "it would have been a simple matter to keep the record open and request the medical records that [Plaintiff] volunteered to produce."[11] Doc. 13, at 7-8. Nonetheless, claims raised for the first time in a reply brief are not ordinarily reviewed by the court. *See Headrick v. Rockwell Int'l Corp.,* 24 F.3d 1272, 1277-78 (10th Cir. 1994) (discussing the general rule forbidding new arguments in a reply); *see also Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

---

[11] At the conclusion of the administrative hearing, the ALJ asked Plaintiff's counsel if there is "[a]nything else before we close the record?" AR 49. Counsel made no request to leave the record open for any purpose, including the submission of any medical records supporting Plaintiff's claims of disabling limitations from migraine headaches. *Id.* In this regard, Plaintiff's allegation of disabling limitations from frequent migraine headaches was not new. *Id.* at 123. Moreover, he had been represented by counsel from the same office since his application for SSI payments was filed. *Id.* at 6, 65, 114. Undoubtedly, Plaintiff's counsel made every effort to gather and file all available evidence in support of that application. If Plaintiff's testimony claiming access to supporting records came as a surprise, the ALJ clearly provided the opportunity for further investigation. Where, as here, Plaintiff was represented by counsel at the administrative hearing "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997).

13

The Commissioner also directs the court to the ALJ's finding that there was no support for Plaintiff's claim of exertional impairments, including walking limitations and a limited ability to stand. Doc. 12, at 8. At the administrative hearing, the ALJ asked Plaintiff how long he could stand before having to sit. AR 44. Plaintiff replied, "I can't stand very long," explaining that it hurt his feet. *Id.* On subsequent questioning, however, Plaintiff stated he could stand for three to five hours and could walk up to a mile.[12] *Id.* at 44-45. He maintains this "does nothing to discredit [his] credibility" and only "establishes that perhaps . . . he does not consider standing three or four or five hours a 'very long time.'" Doc. 13, at 6. Plaintiff, however, does not deny that the ALJ could properly draw a different conclusion from the same testimony. Plaintiff has failed to establish error with regard to the ALJ's specific credibility findings. And, contrary to his overarching claim, "[t]he ALJ's reason for discounting the Plaintiff's testimony . . . is . . . sufficiently specific to make clear . . . to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Doc. 11, at 15.

---

[12] Plaintiff claimed in his initial filings that he could walk "maybe 6 blocks" before needing to stop and rest for ten minutes. AR 165.

> 3. Consistency of the vocational expert's testimony with the DOT.

Apart from Plaintiff's brief summary of his first two contentions, the entirety of his final claim of error is that "[i]t should also be noted that nowhere in the VE's testimony does she ever set forth a single D.O.T. code thereby rendering it practically impossible to know whether or not any of her opinions are, in fact, in consistent with the D.O.T." *Id.* at 16.

Plaintiff's failure to develop the factual – and legal – bases for his argument is sufficient to reject this unsupported claim. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (holding appellate argument "insufficiently developed" and declining to speculate on appellant's behalf); *Effinger v. Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (the court "will not comb through the record" when specific references tied to an argument are not provided) (citing *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)). Nonetheless, the Commissioner responded to Plaintiff's "not[ation]" without qualification, arguing that the vocational expert testified that a hypothetical claimant with Plaintiff's RFC could perform light unskilled work as a "mail clerk" and that the position of "mail clerk" is readily identifiable in the DOT. Doc. 11, at 16; Doc. 12, at 10-11. According to the Commissioner, the DOT code for this position is 209.687-026 and it matches the

vocational expert's testimony – adopted by the ALJ – as light, unskilled work. Doc. 12, at 11; AR 15, 47-48.

In response, Plaintiff makes no claim that the vocational expert's opinions are inconsistent in any manner with the information provided in the DOT for the mail clerk position the Commissioner referenced and identified with the DOT code of 209.687-026.  Doc. 13, at 8-9.  Neither does he contest the Commissioner's argument that it is sufficient at step five for the ALJ to identify one job, existing in sufficient numbers, that Plaintiff remains capable of performing.  *Id.*  Instead, Plaintiff's *only* response is that counsel conducted a search of the DOT using the search term "mail clerk" and it revealed "six job titles containing the search term 'Mail clerk' with SVP's ranging from 4 to 2 [and] this constitutes apparent in consistencies between the VE's testimony [and] the DOT." *Id.*

The undersigned's own search, however, established that while the *search term* "mail clerk" appears in connection with DOT job titles including Direct-Mail Clerk, Parcel Post Clerk, Correspondence Clerk, and Mailroom Supervisor, the sole *job* titled simply as "Mail Clerk"[13] by the DOT is the position identified by the Commissioner with the code 209.687-026. Plaintiff does not dispute the

---

[13] The vocational expert stated Plaintiff could perform the work of a light – referring to job's exertional level – "mail clerk." AR 48.

consistency between the DOT information and the vocational expert's testimony regarding this position. Consequently, he has not established error in connection with the vocational evidence relied upon by the ALJ in finding Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 15.

## IV. Recommendation and notice of right to object.

For the foregoing reasons, the undersigned recommends the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by April 21, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 1st day of April, 2013.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE